UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHMI VIG ARORA, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>            v.<br><br>HDFC BANK LIMITED, ADITYA PURI, SASHIDHAR JAGDISHAN, and SANTOSH HALDANKAR,<br><br>                              Defendants. | Case No.<br><br><u>CLASS ACTION COMPLAINT</u><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Ashmi Vig Arora ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding HDFC Bank Limited ("HDFC Bank" or the "Bank"), analysts' reports and advisories about the Bank, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired HDFC Bank securities

between July 31, 2019 and July 10, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Bank and certain of its top officials.

2.     HDFC Bank was founded in 1994 and is based in Mumbai, India.  The Bank provides various banking and financial services to individuals and businesses in India, Bahrain, Hong Kong, and Dubai.

3.     HDFC Bank operates in Treasury, Retail Banking, Wholesale Banking, Other Banking Business, and Unallocated segments, offering, among other services, various types of loans to millions of its retail borrowers, including personal and vehicle financing loans.

4.     Revenues generated from HDFC Bank's auto and commercial vehicle loans are reported as part of the Bank's Retail Banking segment.

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Bank's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) HDFC Bank had inadequate disclosure controls and procedures and internal control over financial reporting; (ii) as a result, the Bank maintained improper lending practices in its vehicle-financing operations; (iii) accordingly, earnings generated from the Bank's vehicle-financing operations were unsustainable; (iv) all the foregoing, once revealed, was foreseeably likely to have a material negative impact on the Bank's financial condition and reputation; and (v) as a result, the Bank's public statements were materially false and misleading at all relevant times.

6.     On July 13, 2020, during pre-market hours, *The Economic Times* published an article titled "HDFC Bank probes lending practices at vehicle unit."  That article reported that

2

HDFC Bank had "conducted a probe into allegations of improper lending practices and conflicts of interests in its vehicle-financing operations involving the unit's former head."

7.     On this news, HDFC Bank's American Depositary Share ("ADS") price fell $1.37 per share, or 2.83%, to close at $47.02 per share on July 13, 2020.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Bank's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District.  Pursuant to HDFC Bank's most recent annual report on Form 20-F, as of March 31, 2020, there were 5,483,286,460 of the Bank's Equity Shares outstanding.  HDFC Bank's ADSs trade on the New York Stock Exchange ("NYSE"), with each ADS representing three of the Bank's Equity Shares.  Accordingly, there are presumably hundreds, if not thousands, of investors in HDFC Bank's ADSs located within the U.S., some of whom undoubtedly reside in this Judicial District.

12.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.     Plaintiff, as set forth in the attached Certification, acquired HDFC Bank securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant HDFC Bank is organized under the laws of India, with principal executive offices located at HDFC Bank House, Senapati Bapat Marg, Lower Parel, Mumbai 400013, India.  The Bank's securities trade in an efficient market on the NYSE under the ticker symbol "HDB."

15.     Defendant Aditya Puri ("Puri") has served as HDFC Bank's Managing Director at all relevant times.

16.     Defendant Sashidhar Jagdishan ("Jagdishan") served as HDFC Bank's Chief Financial Officer from before the start of the Class Period until August 2019.  Since then, Jagdishan has served as the Bank's Head of Finance, Human Resources, Legal & Secretarial, Corporate Communications, Administration, Infrastructure, and Corporate Social Responsibility, and is also designated as the "Change Agent of the Bank."  Jagdishan is set to succeed Defendant Puri as the Bank's Managing Director in October 2020.

17.     Defendant Santosh Haldankar ("Haldankar") has served as HDFC Bank's Vice President and/or Senior Vice President - Legal & Company Secretary at all relevant times.

18.     Defendants Puri, Jagdishan, and Haldankar are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of HDFC Bank's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of HDFC Bank's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with HDFC Bank, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.     HDFC Bank and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     HDFC Bank was founded in 1994 and is based in Mumbai, India.  The Bank provides various banking and financial services to individuals and businesses in India, Bahrain, Hong Kong, and Dubai.

22.     HDFC Bank operates in Treasury, Retail Banking, Wholesale Banking, Other Banking Business, and Unallocated segments, offering, among other services, various types of loans to millions of its retail borrowers, including personal and vehicle financing loans.

23.     Revenues generated from HDFC Bank's auto and commercial vehicle loans are reported as part of the Bank's Retail Banking segment.

**Materially False and Misleading Statements Issued During the Class Period**

24.    The Class Period begins on July 31, 2019, when HDFC Bank filed an annual report on Form 20-F with the SEC, reporting the Bank's financial and operating results for the quarter and year ended March 31, 2019 (the "2019 20-F").   The 2019 20-F reported net revenues attributable to HDFC Bank's Retail Banking segment in the amount of $6.85 billion, comprising 79.6% of the Bank's total net revenues for the year.

25.    The 2019 20-F also reported that the gross book value of HDFC Bank's auto loans for 2019 was $13.76 billion, while commercial vehicle and construction equipment finance retail credit products (which are reported together) was $10.79 billion.

26.    With respect to HDFC Bank's auto loans, the 2019 20-F represented, in relevant part, that the Bank "offer[s] loans at fixed interest rates for financing of new and used automobile purchases"; that, "[i]n addition to [HDFC Bank's] general marketing efforts for retail loans, [the Bank] market[s] [its] offerings at various customer touch points such as authorized dealers, direct sales agents, [its] banking outlets and the phone banking channel, and from [its] digital touch points"; and that HDFC Bank "believe[s] that [it is] the leader in the auto loan segment, having established [its] presence over almost two decades."

27.    With respect to HDFC Bank's commercial vehicle loans, the 2019 20-F represented, in relevant part, that the Bank "provide[s] secured financing for commercial vehicles . . . along with working capital, trade advances, bank guarantees, and transaction banking services, among others," including "both traditional and digital, to entities engaged in the . . . transportation businesses"; that, "[i]n addition to funding domestic assets, [the Bank] also extend[s] financing for imported assets for which [it] open[s] foreign letters of credit and offer[s] treasury services, such as forward exchange covers"; that the Bank "coordinate[s] and collaborate[s] with original

equipment manufacturers including their authorized dealers to jointly promote [the Bank's] financing options to their clients"; and that the Bank has "a strong market presence in the commercial vehicle . . . financing business."

28.     With respect to HDFC Bank's disclosure controls and procedures, the 2019 20-F represented, in relevant part, that "[t]he Bank performed an evaluation of the effectiveness of the design and operation of its disclosure controls and procedures as of March 31, 2019"; that, "[b]ased on this evaluation, [the Bank's] Principal Executive Officer, [Defendant] Puri, and [the Bank's] Principal Financial Officer, [Defendant] Jagdishan, have concluded that [the Bank's] disclosure controls and procedures . . . are effective"; that such disclosure controls and procedures were effective to "provide reasonable assurance that the information required to be disclosed in filings and submissions under the Exchange Act is recorded, processed, summarized and reported within the time periods specified by the SEC's rules and forms"; and that "such information is accumulated and communicated to [the Bank's] management, including [the Bank's] Principal Executive Officer and Principal Financial Officer, as appropriate, to allow timely decisions about required disclosure."

29.     With respect to HDFC Bank's annual report on internal control over financial reporting, the 2019 20-F represented, in relevant part, that "[m]anagement assessed the effectiveness of [the Bank's] internal control over financial reporting as of March 31, 2019"; that, "[b]ased on its assessment, management has concluded that [the Bank's] internal control over financial reporting was effective as of March 31, 2019"; and that such internal control over financial reporting "provide[s] reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles" ("GAAP"), including policies and procedures that "pertain to the

maintenance of records that, in reasonable detail, accurately and fairly reflect transactions and dispositions of [the Bank's] assets," that "provide reasonable assurance that transactions are recorded as necessary to permit the preparation of financial statements in accordance with [GAAP], and that [the Bank's] receipts and expenditures are being made only in accordance with authorizations of [the Bank's] management and directors," and that "provide reasonable assurance regarding the prevention or timely detection of unauthorized acquisitions, use or dispositions of [the Bank's] assets that could have a material effect on the financial statements."

30.     The 2019 20-F further assured investors that "[t]here were no changes in [HDFC Bank's] internal controls or in other factors that could, or are reasonably likely to, materially affect these controls during the period covered by th[e] [2019 20-F]."

31.     Additionally, the 2019 20-F contained generic, boilerplate representations concerning how "[t]here are inherent limitations to the effectiveness of any system of disclosure controls and procedures, including the possibility of human error and the circumvention or overriding of controls and procedures"; that, "[a]ccordingly, even effective disclosure controls and procedures can only provide reasonable assurance of achieving their control objectives"; that, "[b]ecause of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements"; and that "projections of any evaluation of effectiveness for future periods are subject to the risks that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate."  Plainly, the foregoing risk warnings were generic, catch-all provisions that were not tailored to HDFC Bank's actual known risks regarding improper lending practices in its vehicle-financing operations.

32.     Appended as an exhibit to the 2019 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants Puri and Jagdishan certified that the 2019 20-F

"fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "the information contained in the [2019 20-F] fairly presents, in all material respects, the financial condition and results of operations of the [Bank] as of March 31, 2019 and for the periods presented in the [2019 20-F]."

33.     On October 24, 2019, HDFC Bank filed a Report of Foreign Private Issuer on Form 6-K with the SEC, signed by Defendant Haldankar, reporting the Bank's financial results for the second quarter and half year ended September 30, 2019 (the "2Q20 6-K").  With respect to the Bank's audited standalone and consolidated financial results for the Retail Banking segment for the quarter ended September 30, 2019, the 2Q20 6-K reported 2,710,078 lakh rupees[1] in segment revenue, 402,364 lakh rupees in segment results, 45,996,296 lakh rupees in segment assets, and 81,524,711 lakh rupees in segment liabilities.

34.     With respect to the Bank's audited standalone and consolidated financial results for the Retail Banking segment for the half year ended September 30, 2019, the 2Q20 6-K reported 5,203,007 lakh rupees in segment revenue, 709,078 lakh rupees in segment results, 45,996,296 lakh rupees in segment assets, and 81,524,711 lakh rupees in segment liabilities.

35.     On January 21, 2020, HDFC Bank filed a Report of Foreign Private Issuer on Form 6-K with the SEC, signed by Defendant Haldankar, reporting the Bank's financial results for the third quarter and nine months ended December 31, 2019 (the "3Q20 6-K").  With respect to the Bank's unaudited standalone and consolidated financial results for the Retail Banking segment for the quarter ended December 31, 2019, the 3Q20 6-K reported 2,775,928 lakh rupees in segment revenue, 318,421 lakh rupees in segment results, 47,895,345 lakh rupees in segment assets, and 85,664,751 lakh rupees in segment liabilities.

---

[1] One "lakh" rupees is equal to one hundred thousand rupees.

36.     With respect to the Bank's unaudited standalone and consolidated financial results for the Retail Banking segment for nine months ended December 31, 2019, the 3Q20 6-K reported 7,978,935 lakh rupees in segment revenue, 1,027,499 lakh rupees in segment results, 47,895,345 lakh rupees in segment assets, and 85,664,751 lakh rupees in segment liabilities.

37.     On April 21, 2020, HDFC Bank filed a Report of Foreign Private Issuer on Form 6-K with the SEC, signed by Defendant Haldankar, reporting the financial results of the Bank for the fourth quarter and full year ended March 31, 2020 (the "4Q/FY20 6-K").  With respect to the Bank's audited standalone and consolidated financial results for the Retail Banking segment for the quarter ended March 31, 2020, the 4Q/FY20 6-K reported 2,821,059 lakh rupees in segment revenue, 266,747 lakh rupees in segment results, 48,427,074 lakh rupees in segment assets, and 90,725,810 lakh rupees in segment liabilities.

38.     With respect to the Bank's audited standalone and consolidated financial results for the Retail Banking segment for full year ended March 31, 2020, the 4Q/FY20 6-K reported 10,799,994 lakh rupees in segment revenue, 1,294,246 lakh rupees in segment results, 48,427,074 lakh rupees in segment assets, and 90,725,810 lakh rupees in segment liabilities.

39.     The statements referenced in ¶¶ 24-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Bank's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) HDFC Bank had inadequate disclosure controls and procedures and internal control over financial reporting; (ii) as a result, the Bank maintained improper lending practices in its vehicle-financing operations; (iii) accordingly, earnings generated from the Bank's vehicle-financing operations were unsustainable; (iv) all the foregoing, once revealed, was foreseeably likely to have a material negative impact on

the Bank's financial condition and reputation; and (v) as a result, the Bank's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

40.     On July 13, 2020, during pre-market hours, *The Economic Times* published an article titled "HDFC Bank probes lending practices at vehicle unit."  That article reported, in relevant part, that HDFC Bank had "conducted a probe into allegations of improper lending practices and conflicts of interests in its vehicle-financing operation involving the unit's former head"; that the Bank "decided against proceeding with an earlier proposal to extend the employment of Ashok Khanna, an 18-year veteran at the bank, after the investigation was completed"; that "[t]he vehicle financing unit [Khanna] headed had outstanding loans of more than Rs 1.2 lakh crore ($16 billion) as of March 31"; that "[t]he result of the investigation isn't public, but it followed issues thrown up by an internal audit of the [B]ank's vehicle-dealer lending, as well as allegations of conflicts of interest in the purchase of global positioning systems for vehicles financed by the [B]ank," according to sources without disclosing what the probe uncovered; and that "Khanna, who was 63 at the time of leaving the bank in March, had been due to step aside at the age of 60 but had been receiving extensions since 2017," which "was due in part to the importance of the unit he headed, which accounts for more than 10% of the total loan book."

41.     *The Economic Times* article also reported that HDFC Bank had acknowledged and confirmed the investigation, stating, in relevant part, that "[a] representative of HDFC Bank confirmed there had been an investigation into the vehicle-financing unit but declined to give details," and that, "[i]n an emailed statement, [the Bank's representative] said Khanna had retired in March in line with the terms of his employment contract."  The HDFC Bank representative further advised that "[t]he [B]ank has a well-established process of investigating every complaint

11

that it receives and takes actions as appropriate," and that, "[i]n the said instance as well, the [B]ank has followed the due process."

42.     Additionally, according to *The Economic Times* article, "Khanna declined to comment on the investigation, referring questions on the subject to the [B]ank," and "[h]e denied that any extension to his contract had been proposed, adding that he had retired from the [B]ank in March as planned.

43.     On this news, HDFC Bank's ADS price fell $1.37 per share, or 2.83%, to close at $47.02 per share on July 13, 2020.

44.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Bank's securities, Plaintiff and other Class members have suffered significant losses and damages.

### Post-Class Period Developments

45.     On July 20, 2020, *The Economic Times* published another article titled "Car loan probe: HDFC Bank terminates half a dozen employees for violating the code of conduct."  The article disclosed that HDFC Bank had "terminated at least six senior and mid-level executives after an internal probe revealed that they violated the code of conduct and governance standards by indulging in practices seen as corrupt," citing three people familiar with the matter.  The article further reported that the terminations "pertain[d] to practices at the auto loans department where some staff allegedly forced customers to buy . . . GPS devices bundling it with the car loan," and that "some customers were not even aware of purchasing such a product till the loan documents were checked."  According to the article, "[t]hese errant employees started forcefully bundling these products with car loans to meet sales targets and potentially track borrowers in the event of

a default."  HDFC Bank "has a tie-up with Trackpoint GPS to sell these devices," but "did not respond to a detailed questionnaire seeking comments."

46.     This latest article from *The Economic Times* also reported that, speaking at the Bank's annual general meeting, Defendant Puri "had denied there being any 'conflict of interest.'" Puri reportedly stated that Defendants "had received some whistle-blowing complaints," and that "internal enquiries carried out in the matter on the complaints received has not brought out any conflict of interest issue nor does it have any bearing on [the Bank's] loan portfolio."  However, Puri acknowledged that "[e]nquiry did bring out another aspect related to personal misconduct exhibited by a set of individuals for which appropriate disciplinary actions have been taken."

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

47.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired HDFC Bank securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Bank, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, HDFC Bank securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by HDFC Bank or its transfer agent and may be notified of

the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of HDFC Bank;

- whether the Individual Defendants caused HDFC Bank to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of HDFC Bank securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

53.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- HDFC Bank securities are traded in an efficient market;

- the Bank's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Bank traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Bank's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold HDFC Bank securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

54.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

55.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

56.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of HDFC Bank securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire HDFC Bank securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

59.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for HDFC Bank securities.  Such reports, filings, releases and statements

16

were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about HDFC Bank's finances and business prospects.

60.     By virtue of their positions at HDFC Bank, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

61.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of HDFC Bank, the Individual Defendants had knowledge of the details of HDFC Bank's internal affairs.

62.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of HDFC Bank.  As officers and/or directors of a publicly-held bank, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to HDFC Bank's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of HDFC Bank securities was artificially inflated throughout the Class Period.  In

ignorance of the adverse facts concerning HDFC Bank's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired HDFC Bank securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

63.     During the Class Period, HDFC Bank securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of HDFC Bank securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of HDFC Bank securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of HDFC Bank securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

64.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Bank's securities during the Class Period, upon the disclosure that the Bank had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

66.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67.     During the Class Period, the Individual Defendants participated in the operation and management of HDFC Bank, and conducted and participated, directly and indirectly, in the conduct of HDFC Bank's business affairs.  Because of their senior positions, they knew the adverse non-public information about HDFC Bank's misstatement of income and expenses and false financial statements.

68.     As officers and/or directors of a publicly owned bank, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to HDFC Bank's financial condition and results of operations, and to correct promptly any public statements issued by HDFC Bank which had become materially false or misleading.

69.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which HDFC Bank disseminated in the marketplace during the Class Period concerning HDFC Bank's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause HDFC Bank to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of HDFC Bank within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of HDFC Bank securities.

70.     Each of the Individual Defendants, therefore, acted as a controlling person of HDFC Bank.  By reason of their senior management positions and/or being directors of HDFC Bank, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, HDFC Bank to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of HDFC Bank and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

71.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by HDFC Bank.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  September 3, 2020                    Respectfully submitted,

                                                   POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

POMERANTZ LLP
Jennifer Pafiti
(*pro hac vice* application forthcoming)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Attorneys for Plaintiff*

COHEN & MIZRAHI LLP
Daniel C. Cohen
Edward Y. Kroub
Moshe O. Boroosan
300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201
Telephone: (929) 575-4175
Facsimile: (929) 575-4195
dan@cml.legal
edward@cml.legal
moshe@cml.legal

*Additional Counsel*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, _Ashmi Vig Arora_, make this declaration pursuant to
Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities
Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of
1995.

2.      I have reviewed a Complaint against HDFC Bank Limited ("HDFC" or the "Company")
and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire HDFC securities at the direction of plaintiffs' counsel or in
order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who
purchased or otherwise acquired HDFC securities during the class period, including providing testimony
at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate
lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet lists all of my transactions in
HDFC securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have
not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the
class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs
and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


Executed ___08/21/2020___
          **(Date)**



_____
          **(Signature)**


___ASHMI VIG ARORA___
      **(Type or Print Name)**

**HDFC Bank Limited (HDB)**                                          **Arora, Ashmi Vig**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 10/1/2019 | 28 | $57.5300 |
| Purchase | 11/12/2019 | 5 | $61.7700 |
| Purchase | 11/22/2019 | 41 | $61.3300 |