# EXHIBIT C

**Table of Contents**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

# FORM 20-F

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OR**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended March 31, 2020**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**OR**

☐ **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Date of event requiring this shell company report**

**Commission file number 001-15216**

---

# HDFC BANK LIMITED
**(Exact name of Registrant as specified in its charter)**

---

**Not Applicable**
**(Translation of Registrant's name into English)**

**India**
**(Jurisdiction of incorporation or organization)**

**HDFC Bank House, Senapati Bapat Marg, Lower Parel, Mumbai 400013, India**
**(Address of principal executive offices)**

**Name: Santosh Haldankar, Senior Vice President (Legal) and Company Secretary**
**Telephone: 91-22-3976-0711**
**Email: Santosh.Haldankar@hdfcbank.com**
**Office Address: HDFC Bank Ltd; Legal & Secretarial Dept; 2nd floor, Zenith House,**
**Opp. Race Course Gate No. 5 & 6 , Keshavrao Khadye Marg,**
**Mahalaxmi(west), Mumbai 400 034, India.**
**(Name, telephone, e-mail and/or facsimile number and address of company contact person)**

---

**Securities registered or to be registered pursuant to Section 12(b) of the Act:**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| American Depositary Shares, each representing three Equity Shares, Par value Rs. 1.0 per share | HDB | The New York Stock Exchange |

**Securities registered or to be registered pursuant to Section 12(g) of the Act: Not Applicable**

**Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act: Not Applicable**

---

**Table of Contents**

***Our success depends in large part upon our management team and skilled personnel and our ability to attract and retain such persons.***

We are highly dependent on our management team, including the efforts of our Managing Director and other members of our senior management. Our future performance is dependent on the continued service of these persons or similarly skilled and qualified successors. The term of the Bank's current Managing Director, Mr. Aditya Puri, will end on October 26, 2020. On April 30, 2020, the Bank submitted to the RBI for approval, in order of preference, the names of three candidates to succeed Mr. Puri. As of the date of this report, the RBI has not communicated a decision with respect to its preference for the Bank's new Managing Director. We also face a continuing challenge to recruit and retain a sufficient number of skilled personnel, particularly if we continue to grow. Competition for management and other skilled personnel in our industry is intense, and we may not be able to attract and retain the personnel we need in the future. The loss of key personnel may restrict our ability to grow and consequently have a material adverse impact on our results of operations and financial position.

***We have previously been subject to penalties imposed by the RBI. Any regulatory investigations, fines, sanctions, and requirements relating to conduct of business and financial crime could negatively affect our business and financial results, or cause serious reputational harm.***

The RBI is empowered under the Banking Regulation Act to impose penalties on banks and their employees to enforce applicable regulatory requirements. The Financial Intelligence Unit (India) (the "FIU-IND"), in January 2015, levied a fine on us of Rs. 2.6 million relating to our failure to detect and report attempted suspicious transactions which appeared in media during financial year 2013. We filed an appeal against the order before the appellate tribunal stating that there were only enquiries made by the reporters of the media and there were no instances of any attempted suspicious transactions. In June 2017, the appellate tribunal dismissed the penalty levied by the FIU and observed that the prescribed matter fell within the provisions of section 13(2)(a) of the Prevention of Money Laundering Act, 2002 ("PMLA"), 2002 (pursuant to which a warning was required to be given to the Bank), and that the matter did not fall within section 13(2)(d) of the PMLA (pursuant to which monetary penalties can be imposed on failure to comply with certain obligations under the PMLA) as mentioned by the FIU. However, FIU-IND challenged the appellate tribunal's order in the Delhi High Court. Subsequently, through its order dated September 4, 2019, the Delhi High Court held that the violation of the reporting obligations on the part of the respondent banks warranted issuance of a warning in writing under Section 13(2)(a) of the Act, instead of a monetary penalty as imposed under Section 13(2)(d) of the Act, and disposed of the case filed by FIU-IND.

In October 2015, there were media reports about irregularities in advance import remittances in various banks, further to which the RBI had conducted a scrutiny of the transactions carried out by us. In April 2016, the RBI issued a show cause notice to us to which we submitted our detailed response. After considering our submissions, the RBI imposed a penalty of Rs. 20.0 million on us in July 2016, which we paid, on account of pendency in receipt of bills of entry relating to advance import remittances made and lapses in adhering to KYC and Anti-Money Laundering ("AML") guidelines in this respect. During 2019 we received two separate fines for non-compliance with certain RBI directives. In its order dated February 4, 2019, the RBI imposed a monetary penalty of Rs. 2.0 million on us for failing to comply with the RBI's KYC and AML standards, as set out in their circulars dated November 29, 2004 and May 22, 2008. In its order dated June 13, 2019, the RBI imposed a monetary penalty of Rs. 10 million on us for failing to comply with its KYC, AML and fraud reporting standards, following an investigation into bills of entry submitted by certain importers. The penalties were imposed under Section 47A(1)(c) and Section 46(4)(i) of the Banking Regulation Act, 1949. We have since implemented corrective action to strengthen our internal control mechanisms so as to ensure that such incidents do not repeat themselves. See "*Supervision and Regulation—Penalties*". In 2020, the Bank received one fine for non-compliance with RBI regulations. In its order dated January 29, 2020, the RBI imposed a monetary penalty of Rs. 10 million on the Bank for failure to undertake ongoing due diligence with respect to 39 current accounts which had been opened by customers of the Bank to participate in an initial public offering, but where the transactions effected were disproportionate to the declared income and profile of the customers. This penalty was imposed by the RBI using the powers conferred under the provisions of Section 47A(1)(c) read with Section 46(4)(i) of the Banking Regulation Act 1949. The Bank has since strengthened its internal control mechanisms so as to ensure that such incidents are not repeated.

In May 2020, following an internal inquiry we determined that certain employees received unauthorized commissions from a third-party vendor of GPS products, with whom we have an agreement to offer GPS devices to our auto loan customers. The personal misconduct of these employees is in violation of our code of conduct and governance standards and we have taken disciplinary action with respect to the employees involved, including separation of services of certain employees.

We cannot predict the initiation or outcome of any further investigations by other authorities or different investigations by the RBI. The penalties imposed by the RBI have generated adverse publicity for our business. Such adverse publicity, or any future scrutiny, investigation, inspection or audit which could result in fines, public reprimands, damage to our reputation, significant time and attention from our management, costs for investigations and remediation of affected customers, may materially adversely affect our business and financial results.

41