**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ASHMI VIG ARORA, Individually and On Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  v.<br><br>HDFC BANK LIMITED, ADITYA PURI, and SASHIDHAR JAGDISHAN,<br><br>  Defendants. | Case No.: 2:20-cv-04140-EK-JMW |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................2

I.   THE OPPOSITION FAILS TO IDENTIFY A FALSE OR MISLEADING STATEMENT OR OMISSION, MUCH LESS ONE THAT IS MATERIAL........................2

      The Statements about the Auto Loan Group's Growth Strategy Are True....................................................................................................................................2

      Statements about Internal Controls are Not Actionable Here...............................3

      The GPS Bundling Was Immaterial ......................................................................5

      The Challenged Statements Were Not Material as Shown by the Insignificant Stock Price Drop...................................................................................7

II.  THE OPPOSITION FAILS TO IDENTIFY PLEADED FACTS GIVING RISE TO THE REQUIRED STRONG INFERENCE OF SCIENTER...................................7

      The Bank's "Admissions" and the RBI's Fine ......................................................7

      Executive Retirements ...........................................................................................8

      Speaking with "Certitude" .....................................................................................8

      Access to Information ............................................................................................9

      Stock Sales.............................................................................................................9

      Mr. Khanna's Purported "Scienter" ......................................................................9

      A Purported "Pattern of Misconduct"..................................................................10

      HDFC's Remedial Measures Negate Scienter.....................................................10

CONCLUSION.......................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Coronel v. Quanta Capital Holdings Ltd.*,
2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ...................................................................7

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)......................................................................................................7

*ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ........................................................................................6

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)..........................................................................6

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000)..........................................................................................6

*In re Aceto Corp. Sec. Litig.*,
2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)................................................................9

*In re AT&T/DirecTV Now Sec. Litig.*,
480 F. Supp. 3d 507 (S.D.N.Y. 2020)...........................................................................5

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
2017 WL 4049253 (S.D.N.Y. June 28, 2017),
*aff'd sub nom. Sfiraiala v. Deutsche Bank Aktiengesellschaft*,
729 F. App'x 55 (2d Cir. 2018) ...................................................................................4

*In re Eletrobras Sec. Litig.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017)...........................................................................8

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ......................................................................5, 8

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
859 F. Supp. 2d 572 (S.D.N.Y. 2012)...........................................................................3

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015)...........................................................................5

*In re Sadia, S.A. Securities Litigation*,
643 F. Supp. 2d 521 (S.D.N.Y. 2009)...........................................................................8

*In re Symbol Techs., Inc. Sec. Litig.*,
2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013) ..............................................................10

*In re Vale S.A. Sec. Litig.*,
2020 WL 2610979 (E.D.N.Y. May 20, 2020) ............................................................4, 6

*In re Van der Moolen Holding N.V. Securities Litigation*,
    405 F. Supp. 2d 388 (S.D.N.Y. 2005)...................................................................................3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)...............................................................................................10

*Menaldi v. Och-Ziff Capital Management Group LLC*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016)...................................................................................3

*Patel v. L-3 Commc'ns Holdings Inc.*,
    2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016).......................................................................8

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
    2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) ........................................................................9

*Plumbers & Pipefitters National Pension Fund v. Davis*,
    2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020).......................................................................9

*Salim v. Mobile Telesystems PJSC*,
    2021 WL 796088 (E.D.N.Y. Mar. 1, 2021) .......................................................................10

*Schiro v. Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019)...................................................................................8

*SEC v. Penn*,
    225 F. Supp. 3d 225 (S.D.N.Y. 2016)...................................................................................8

*Strougo v. Barclays PLC*,
    105 F. Supp. 3d 330 (S.D.N.Y. 2015)...................................................................................6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    672 F. Supp. 2d 596 (S.D.N.Y. 2009)...................................................................................8

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    2017 WL 1169629 (S.D.N.Y. Mar. 28, 2017) ..................................................................6, 7

**PRELIMINARY STATEMENT**

The question before the Court is not whether a few rogue actors among HDFC's 117,000 employees improperly bundled GPS devices with auto loans.  HDFC itself investigated that conduct, disciplined the wrongdoers, and publicly disclosed the wrongdoing.  The question is whether the Amended Complaint (the "AC") pleads a securities fraud claim.  As demonstrated in Defendants' motion (the "Motion" or "Mot."), the AC fails to state a claim, and nothing in Plaintiff's Opposition (the "Opposition" or "Opp.") alters this conclusion.

*First*, the AC fails to plead any false or misleading statement or omission.  Mot. at 8.  The Opposition concedes that nothing about the GPS bundling rendered any of HDFC's financial disclosures false or misleading.  The Opposition also does not dispute that HDFC's statements about its internal controls made no claim that those controls were infallible, and in fact said the opposite.

*Second*, even if the AC could point to an alleged misstatement (which it does not), the AC fails to plead materiality.  The AC pleads that the bundling amounted to (at most) just a tenth of a percent of the Bank's total auto loans in FY2020 and less than two-one-hundredths of one percent of the Bank's total retail assets in the same year.[1]  These amounts are immaterial as a matter of law.  The Opposition also does not dispute that the stock drop pleaded in the AC was immaterial (2.8%) and lasted only a few days.

*Third*, Plaintiff also does not dispute that the AC includes none of the indicia of scienter that are typically present in complaints that survive a motion to dismiss, such as reliance on confidential witness statements or particular facts reflecting that stock sales were suspiciously

---

[1] The *Economic Times* article that the AC incorporates states that the *total* costs of GPS devices sold per month, both authorized and unauthorized, amounted to approximately $15.2 million USD (Mot. at 11), compared with the value of the Bank's FY2020 auto loan book ($12.628**B** USD) and FY2020 Total Assets ($211.724**B** USD).  *See* Gross Decl. Ex. 1 at 10, 74.

1

timed.  It also does not dispute that, following discovery of the GPS bundling, Defendants initiated disciplinary action against the bad apples – a fact that in prior cases was held to negate the required strong inference of scienter.

Unable to overcome these facts, the Opposition focuses on misconduct by a handful of employees in one business unit, for which the Reserve Bank of India ("RBI"), an Indian financial regulator, fined HDFC.  But employee misconduct does not create a securities fraud case, and here the alleged facts demonstrate the absence of any such claim, given the lack of particularized allegations of a material misstatement to investors and facts giving rise to a "strong" inference of scienter.  Moreover, the RBI's fine amounted to only one-one-hundredth of one percent (0.01%) of the Bank's auto loan book value, or seven-ten-thousandths of one percent (0.0007%) of the Bank's total assets in FY2020.[2]  Pointing to an immaterial fine imposed long after the Class Period is no substitute for meeting the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").

## ARGUMENT

I.    **THE OPPOSITION FAILS TO IDENTIFY A FALSE OR MISLEADING STATEMENT OR OMISSION, MUCH LESS ONE THAT IS MATERIAL**

**<u>The Statements about the Auto Loan Group's Growth Strategy Are True</u>**.  Plaintiff's Opposition fails to show the AC alleges an actionable statement or omission.  The AC focuses on HDFC's statements that its auto loan group sought to grow its business by "offering more products" and by marketing auto loans through "relationships" with other corporate entities.  AC ¶¶ 31-32, 40, 49.  However, the AC does not plead these were false statements – there is no allegation, for example, that the group *did not* seek to grow its business by offering more

---

[2] The RBI assessed a fine of "10.00 crore [Rupees]," which is 100M INR.  *See* Weinrib Decl. Ex. A.  At the operative exchange rate on May 28, 2021, the date the RBI's fine was announced, 100M INR was equivalent to approximately $1.38M USD.  *See XE.com*, Historical Exchange Rate Data.  Again, by contrast, the value of the Bank's FY2020 auto loan book was $12.628**B** USD and FY2020 Total Assets was $211.724**B** USD.  *See* Gross Decl. Ex. 1 at 10, 74.

2

products. Mot. at 18. The Opposition argues that HDFC's decision to "speak about the success of [its] vehicle financing segment along with detailed discussion of growth strategies that included product offerings" gave rise to a duty to disclose the GPS bundling. Opp. at 15. This argument fails, however, as it ignores extensive case law cited in the Motion holding that revealing one fact about a subject (*e.g.*, auto group's growth strategies) does not trigger a duty to reveal all facts on the subject (*e.g.*, immaterial GPS bundling misconduct), or render statements about the subject false, so long as what was revealed is not so incomplete as to mislead. *See* Mot. at 18. Here, the challenged statements do not present an "incomplete" or misleading picture of the auto loan group, especially given the immateriality of the GPS bundling discussed below. *Id.* at 17-18; *see also In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (statements "not misleading" where "they do not suggest that the undisclosed improper activity alleged by Plaintiff was not occurring").[3]

**Statements about Internal Controls are Not Actionable Here**. Plaintiff next argues that HDFC's statements describing its internal controls and efforts to attempt to prevent fraud were false or misleading because the GPS bundling "demonstrate[s] that HDFC did not have effective internal controls[.]" Opp. at 15-16. But Plaintiff ignores the Motion's showing that these statements are inactionable as a matter of law, as the discovery of the misconduct means only that HDFC's internal controls were not *perfectly* effective at preventing all instances of misconduct – *just as HDFC repeatedly warned might be the case*, and just as would be expected at any company with over 117,000 employees. Mot. at 13-15 (Forms 20-F expressly warned investors that "internal control over financial reporting may not prevent or detect

---

[3] Plaintiff's cited authorities are inapposite. *See* Opp. at 15. In *Menaldi v. Och-Ziff Capital Management Group LLC*, 164 F. Supp. 3d 568, 579 (S.D.N.Y. 2016), the Court found *no duty* to disclose the alleged wrongdoing at issue. And in *In re Van der Moolen Holding N.V. Securities Litigation*, 405 F. Supp. 2d 388, 401 (S.D.N.Y. 2005), the defendant made statements *touting its income* without disclosing that some of that income was attributable to wrongdoing. There are no similar allegations here.

3

misstatements"). Indeed, courts recognize that even highly effective internal controls will not prevent every instance of employee misconduct, and that hindsight is not sufficient grounds on which to plead falsity unless the defendant company "purport[s] to guarantee that [the] controls will perform perfectly in every instance[.]" *Id.* at 14 (citing cases).[4] The AC itself pleads that HDFC made no such guarantee, and in fact warned that the opposite could be true. *See id.* at 13-15. Thus, while the Opposition asserts that the challenged statements "lull[ed] [investors] into a false sense of security" about HDFC's internal controls (Opp. at 18), the facts pled in the AC indicate the opposite, as the Bank's Forms 20-F contained these explicit warnings to investors.

Plaintiff argues the Court should disregard these warnings in the Forms 20-F because Defendants allegedly were aware of the GPS bundling at the times the warning was issued (Opp. at 17). Unlike in the cases on which Plaintiff relies, however, the AC does not include facts suggesting that Defendants were aware of the alleged misconduct at the time the challenged statements were issued – the last of which was made in July 2019, nearly a year before the end of the Class Period.

The Motion also explained that many of the challenged statements regarding internal controls are inactionable puffery. Mot. at 16-17. Plaintiff argues that, in certain cases, puffery about an issuer's integrity can be actionable (Opp. at 17) but fails to demonstrate that this is such a case. In the cases cited by Plaintiff, the actionable statements were made following a scandal to persuade the market of the effectiveness of the defendant's internal controls. *See In re Vale S.A. Sec. Litig.*, 2020 WL 2610979, at *2, *12 (E.D.N.Y. May 20, 2020) (statements about safety and sustainability were actionable when made following a fatal mine collapse that occurred prior

---

[4] Plaintiff mischaracterizes the instructive *In re Deutsche Bank* decision (Opp. at 17). Contrary to Plaintiff's assertion, the court expressly considered "statements concerning the adequacy of the Bank's internal controls" – not just their mere existence – and found that such statements "are not actionable[.]" *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2017 WL 4049253, at *7 (S.D.N.Y. June 28, 2017), *aff'd sub nom. Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018).

to the class period); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 372, 381 (S.D.N.Y. 2015) (statements about internal controls actionable where defendant was involved in a "multi-billion dollar bribery" scheme).  Here, the context around the challenged statements is entirely different from that in the cases cited in the Opposition – HDFC's statements were not made following public revelation of the GPS bundling activities and thus could not have been made to reassure the public about the soundness of its internal controls in the wake of such a revelation.  In any case, as noted above, HDFC's statements warned investors that its controls could not guarantee an absence of employee wrongdoing.

**The GPS Bundling Was Immaterial**.  The AC also fails to plead facts supporting its allegation that Defendants omitted the GPS bundling's purportedly foreseeable "material negative impact on the Bank's financial condition[.]"  *See* Mot. at 9-11 (quoting, *e.g.*, AC ¶¶ 4, 38).  As the Motion explained, the AC alleges no facts indicating that the GPS bundling or its disclosure had *any* actual impact on the Bank's financial statements, much less a material impact. *Id.*  The Opposition does not identify any allegations that "tend[] to demonstrate the materiality of the alleged [mis]statements in light of [HDFC's] total financial picture," as required in a securities fraud case.  *Id.* at 9-10 (quoting *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 367 (E.D.N.Y. 2013)).  This is unsurprising: the AC itself pleads that the GPS bundling affected, at most, only a tiny fraction of the Bank's auto loan book.  *Id.* at 10-11.[5]  *Compare In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 528 (S.D.N.Y. 2020) (no materiality at the pleading stage where "[p]laintiffs have not plausibly alleged that employee misconduct affected more than a tiny percentage of AT&T's subscription figures for DTVN, a product that is, in turn,

---

[5] Plaintiff's suggestion that Defendants cannot rely on the July 22, 2020 *Economic Times* article (*see* Opp. at 12-13) is incorrect.  Plaintiff incorporated the *Economic Times* article into the AC by reference.  *See* Mot. at 3 & n.4.  That article demonstrates that the GPS bundling was immaterial, which is the information received by investors.  *Id.*

5

only a slice of AT&T's video business, which is a subset of the Entertainment segment, which is, in turn, less than a third of AT&T's overall business").[6]

Stuck with its allegations that the employee misconduct was immaterial, Plaintiff argues that materiality cannot be resolved on a motion to dismiss. Opp. at 11. This argument cannot withstand the Circuit-level authority cited in the Motion affirming dismissal of securities class actions on materiality grounds where the financial impact of alleged misconduct was much larger than that alleged here. *See* Mot. at 11-12 & n.12. The cases on which Plaintiff relies (Opp. at 11-13) either (i) concerned a financial impact or share price decline alleged to be orders of magnitude larger than the impact alleged here and in the cases cited in the Motion, *see Ganino v. Citizens Utils. Co*., 228 F.3d 154, 166 (2d Cir. 2000) (misstatements of between 8% and 17.7% of relevant line item); *Villella v. Chem. & Mining Co. of Chile Inc.*, 2017 WL 1169629, at *12 (S.D.N.Y. Mar. 28, 2017) (15% share price decline, discussed *infra* p. 7); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 183 (S.D.N.Y. 2010) (alleged misstatements pertained to between 20% and 48% of loans in relevant loan books); or (ii) did not concern the issue here, namely whether trivial amounts are material to a defendant's financial condition, *see In re Vale*, 2020 WL 2610979, at *12 (analyzing materiality of statements about "safety and sustainability"); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 349 (S.D.N.Y. 2015) (same for statements about integrity).[7]

---

[6] Plaintiff also argues that the GPS bundling was material because it somehow put the entire auto loan book "at risk[.]" Opp. at 11. Plaintiff pleads no facts supporting this hyperbolic speculation, and it is well-established that this type of conclusory pleading does not satisfy the PSLRA. Mot. at 9. Similarly, Plaintiff's claim that the GPS bundling was aimed at enhancing "loan collection efforts" and meeting unspecified sales targets (Opp. at 12-13) is irrelevant because the purported loan collection efforts and sales targets are not described in the AC or alleged to have had a material negative impact on HDFC's financial condition. Mot. at 9-10.

[7] Plaintiff's emphasis on *Strougo* is misplaced. *See* Opp. at 13. There, the complaint alleged that the defendant "had staked its 'long-term performance' on restoring its integrity" in the aftermath of the well-known LIBOR manipulation scandal. *Strougo*, 105 F. Supp. 3d at 349. The misstatements at issue, although financially insignificant, "call[ed] into question the integrity of the company as a whole," and were found to be material at the pleading stage. *Id.* No similar allegations are plead here about either an attempt by HDFC to "restore" its integrity or about the challenged statements implicating the Bank's integrity "as a whole". *Id. ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) (Opp. at 13) also does not help Plaintiff's cause: the Second Circuit affirmed dismissal on materiality grounds at the pleading stage. *See* Mot. at 11.

6

**The Challenged Statements Were Not Material as Shown by the Insignificant Stock Price Drop**.  The Opposition also fails to dispute that the stock market's indiscernible reaction – an alleged (and very temporary) stock drop of only 2.8% – reflects that investors did not consider the GPS bundling to be material.  *See* Mot. at 5.  *See also Coronel v. Quanta Capital Holdings Ltd.*, 2009 WL 174656, at *19 & n.10 (S.D.N.Y. Jan. 26, 2009) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (insignificant stock price drop is relevant to the materiality assessment at the pleading stage)).  *Villella* (Opp. at 13) does not help Plaintiff.  There, the court found an alleged financial misstatement to be material where it was followed by a "decrease of over 15% in the price of [the defendant company's] ADSs" – more than *five times* the small and temporary drop alleged here.  *See Villella*, 2017 WL 1169629, at *12.

II.   **THE OPPOSITION FAILS TO IDENTIFY PLEADED FACTS GIVING RISE TO THE REQUIRED STRONG INFERENCE OF SCIENTER**

The Opposition presents a litany of arguments which, as demonstrated below, raise no inference – let alone the required "strong" or "cogent" inference – of Defendants' scienter.

**The Bank's "Admissions" and the RBI's Fine**.  Plaintiff seeks to bootstrap HDFC's statement of immaterial misconduct by rogue employees and the related (but unpleaded) immaterial fine into a securities fraud claim by claiming that these facts support a strong inference of scienter.  Opp. at 20-21.  They do not.  As the Motion explains, internal corporate misconduct does not support a securities fraud claim absent allegations indicating that false statements were made with an intent to mislead investors.  Mot. at 24-25.  Nothing in the AC suggests that intent.  For example, Plaintiff has not pleaded facts reflecting that either Individual Defendant was aware of the GPS bundling at the time the challenged statements were issued.[8]

---

[8] For the same reason, even if the challenged statements concerning the auto loan group's growth strategies and products were misleading because they failed to disclose the GPS bundling (which they were not), there are no pleaded facts suggesting that omission was intentional or knowing, and thus made with the requisite scienter.

7

With respect to the RBI's fine of approximately $1.38M USD, it was immaterial, *see supra* n.2, and imposed long after the Class Period. Any "admissions" related to the RBI's fine do not raise an inference of scienter, and the cases cited by Plaintiff do not result in a contrary conclusion. In those cases, scienter was found to be adequately pleaded where a plaintiff alleged an admission to *intentional* wrongdoing that would have been known to the defendants when the relevant misstatements were made.[9] There is no such allegation that any "admissions" related to the RBI's fine involved the admission of intentional misconduct by HDFC or the Individual Defendants that would have been known to them when the challenged statements were made.

**Executive Retirements**. Plaintiff argues that the retirements of defendant Puri and non-defendant Ashok Khanna support its scienter allegations. Opp. at 21. But Plaintiff has not pleaded any facts concerning the circumstances of those retirements. Without such facts, an employee's resignation alone "does not raise a strong inference of scienter." *See Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019).[10]

**Speaking with "Certitude"**. Relying on one district court case from Pennsylvania, Plaintiff argues that "[s]peaking with detail and 'certitude' contributes to the inference of scienter." Opp. at 23. The Court need not determine whether this is a viable scienter theory in this Circuit, because the Opposition identifies no specific examples of such "certitude" other than

---

[9] *See SEC v. Penn*, 225 F. Supp. 3d 225, 236 (S.D.N.Y. 2016) (admissions in a criminal case to embezzling funds "with the intent to defraud" satisfy the scienter requirement); *Patel v. L-3 Commc'ns Holdings Inc.*, 2016 WL 1629325, at *14 (S.D.N.Y. Apr. 21, 2016) (admission that CFO was terminated for "intentional misconduct" supported a scienter inference). In *In re Gentiva*, the court found no scienter, despite the existence of investigations by the SEC and Senate Finance Committee. 932 F. Supp. 2d at 383.

[10] Unlike here, in the cases on which Plaintiff relies, such facts *were* pleaded. *See* Opp. at 21 (citing *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 469 & n.12 (S.D.N.Y. 2017) (resignations probative of scienter where "CEO and board were replaced, at least in part, because of [misconduct] and the internal investigation"); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 608 (S.D.N.Y. 2009) (executive resignation significant where his "resignation email" provided "additional evidence" that defendants "were aware of ongoing internal control deficiencies")). In *In re Sadia, S.A. Securities Litigation*, the court merely listed executive resignations as among the facts presented by the plaintiffs to support scienter; it gave no indication that it "credit[ed]" that fact as Plaintiff claims here (Opp. at 21). 643 F. Supp. 2d 521, 534 (S.D.N.Y. 2009).

8

the Individual Defendants' SOX certifications. *Id.* Merely signing a SOX certification does not support a scienter inference. Mot. at 21; *see also In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at \*8 (E.D.N.Y. Aug. 6, 2019). Plaintiff's cited case, *Plumbers & Pipefitters National Pension Fund v. Davis*, found SOX certifications probative of scienter only because defendants had "actual knowledge" of the falsity of their disclosures. *See* 2020 WL 1877821, at \*14 (S.D.N.Y. Apr. 14, 2020). Plaintiffs have not pleaded facts reflecting actual knowledge in the AC. As noted in the Motion, Defendants' reaction to the discovery of the employee misconduct indicates the opposite. Mot. at 24.

**Access to Information**. Plaintiff relies on *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 2016 WL 5818590, at \*7 (S.D.N.Y. Oct. 5, 2016) to argue that it can plead scienter by asserting the Individual Defendants had "access to information." Opp. at 23. But, as *Pirnik* itself holds, the complaint still must contain particularized allegations that defendants were "aware of nonpublic facts contradicting their public representations[.]" 2016 WL 5818590, at \*7. The AC includes no facts reflecting that Defendants were aware of the GPS bundling at the time that any of the challenged statements were made. *See* Mot. at 20.

**Stock Sales**. The Motion explained the AC lacks the requisite facts showing that Individual Defendants' stock sales were "unusual" in "timing" and "percentage of shares sold[.]" Mot. at 22. The Opposition does not argue otherwise; it just repeats the AC's allegations. *See* Opp. at 25. Plaintiff also fails to rebut Defendants' showing that the largest (by far) alleged sale is not alleged to have occurred during the Class Period. Mot. at 23 & nn. 26, 27.

**Mr. Khanna's Purported "Scienter"**. Plaintiff attempts to save its complaint by arguing that non-defendant Ashok Khanna's purported scienter can be imputed to HDFC. Opp. at 24. Imputing scienter from an individual to a corporate defendant requires "factual allegations

9

giv[ing] rise to a strong inference" of that individual's scienter.  *See id.* (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177-78 (2d Cir. 2015)).  However, the AC's alleged facts about Mr. Khanna are plainly deficient: the AC alleges only that he was the "head" of HDFC Bank's vehicle lending department (¶ 25), he retired in March 2020 (¶ 74), and he received proceeds from stock sales not alleged to be suspicious or "unusual" (¶ 29).

**A Purported "Pattern of Misconduct"**.  Plaintiff describes temporary "outages" occurring in HDFC's digital products and a post-Class Period violation of an Indian regulator's "interim directions" related to securities pledged by a particular broker.  Opp. at 22; AC ¶¶ 82, 83.  These issues have nothing to do with the pleaded claims, the auto loan group, or the GPS bundling, nor does the AC suggest they do.  Nor do they have any bearing on any allegations regarding scienter relevant to this case.  The sole case Plaintiff cites to suggest that a purported "pattern of misconduct" is relevant to scienter concerns a pattern of the *same* misconduct (manipulated financials) at issue in that action.  *See* Opp. at 22 (citing *In re Symbol Techs., Inc. Sec. Litig.*, 2013 WL 6330665, at *10 (E.D.N.Y. Dec. 5, 2013)).

**HDFC's Remedial Measures Negate Scienter**.  Defendants authorized the investigation and discipline of relevant employees engaged in the GPS bundling – conduct that negates any scienter inference.  *See* Mot. at 21 & n.24 (citing, *e.g.*, *Salim v. Mobile Telesystems PJSC*, 2021 WL 796088, at *14 (E.D.N.Y. Mar. 1, 2021)).  Plaintiff fails to provide a viable answer to this key fact, which renders the AC deficient as a matter of law.

## CONCLUSION

For the reasons stated here, and in the Motion, the Complaint should be dismissed.[11]

---

[11] Plaintiff's failure to plead its claim under Section 10(b) likewise requires dismissal of its claim under Section 20(a). *See* Mot. at 25.

Dated: July 23, 2021

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Caz Hashemi*
Caz Hashemi (admitted *pro hac vice*)
Rodney G. Strickland, Jr. (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
chashemi@wsgr.com
rstrickland@wsgr.com

Sheryl Shapiro Bassin
Paul C. Gross
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
sbassin@wsgr.com
pgross@wsgr.com

*Counsel for Defendants HDFC Bank Limited, Aditya Puri, and Sashidhar Jagdishan*