

Tamar A. Weinrib
Partner

February 2, 2022

The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> **Re:**    **Plaintiff's Supplemental Letter in Opposition to Motion to Dismiss,** *Arora v. HDFC Bank Limited et al.*, **No. 2:20-cv-04140-EK-JMW**

Dear Judge Komitee:

Lead Plaintiff Meitav Dash Provident Funds and Pension Ltd. ("Plaintiff") respectfully submits this letter in accordance with the Court's instructions issued on January 14, 2022 (Doc. No. 42) and in response to Defendants HDFC Bank Limited ("HDFC"), Aditya Puri, and Sashidhar Jagdishan's letter filed on January 26, 2022 (Doc. No. 44) ("Letter").

### I.    Defendants' Self-Serving Calculation is a Red Herring

To plead the falsity, Plaintiff is required to allege with particularity that Defendants issued misleading statements.  Here, Plaintiff alleges that Defendants issued misleading statements about their vehicle financing business—including growth strategies and product offerings—as well as repeated assurances that HDFC had a robust system in place to detect and prevent fraud that included a fraud monitoring committee (on which Defendant Puri sat), an internal audit department, a code of ethics, and a whistleblower policy, all comprehensively described throughout the Class Period.  At no point during the Class Period did Defendants reveal that an egregious auto loan fraud persisted undeterred in HDFC's vehicle financing business for ***four years.***  Defendants do not dispute that the auto loan fraud occurred.  Indeed, they cannot, given their public admissions, the forced retirement of the head of the vehicle financing business, the termination of multiple mid and senior level employees involved in the fraud, and the damning findings of the Reserve Bank of India ("RBI").

Defendants therefore argue that the Court should disregard their undisputed fraudulent conduct, and inappropriately dismiss this action on materiality grounds, using a speculative calculation they construct based on a quote from an anonymous source in a post-Class Period July 22, 2020 *Economic Times* article ("July 22 Article"). Defs. Ex. 8, Doc. No. 35-8. Defendants do not cite SEC filings or any other Company document to substantiate their calculation.  Instead, they use the July 22 Article which quotes an unnamed "official in the know," without any identifying details to suggest credibility or reliability, as stating that "4000-5000 of these devices

The Honorable Eric R. Komitee
Page 2

costing Rs 18,000-19,000 each were sold every month." *Id.* That same "official" stated that "the gross failure for the bank has been its audit which failed to spot the misdoing." *Id.* Defendants self-serving calculation based on unsubstantiated numbers proffered by an unnamed and uncredited source do not provide grounds for dismissal on materiality grounds. Indeed, the type of factual dispute their "calculation" raises is the very reason why it is well accepted that materiality is a fact intensive issue and inappropriate for adjudication at the pleading stage. *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 348 (S.D.N.Y. 2015). Moreover, the amount and value of all the GPS devices implicated in Defendants' four-year fraud are only part of the story. Defendants' calculation does not include the value of the defaulted loans they collected on during that same time period due to their ability to improperly track borrowers utilizing those GPS devices.[1]

Additionally, Defendants argue that Plaintiff should have alleged the "number or value of the GPS devices that were improperly bundled with auto loans." Letter at 1. However, as the Complaint makes clear, and as the July 13, 2020 *Economic Times* article (the corrective disclosure) confirms, Defendants curiously have never revealed details regarding the results of their investigation into their auto loan fraud, including "the number or value of the GPS devices" involved. Prior to discovery, Plaintiff cannot reveal what Defendants have chosen to hide. Regardless, those metrics are not needed to allege falsity with particularity at the pleading stage based on the existence of the auto loan fraud, given HDFC's admissions and the RBI's findings.

## II.      The July 13, 2020 Corrective Disclosure

The Parties agree that HDFC's share price fell 2.83% on July 13, 2020 following the corrective disclosure. The Letter sets forth the performance of five stock market indices "from closing on July 10 to closing on July 13, 2020." Letter at 2. The Letter demonstrates that HDFC's shares fell by a percentage **more than twice** the amount of the Russell 3000 (-1.14%) and the Wilshire 5000 (-1.10%), **three times the amount** of the S&P 500 (-0.94%), and almost **eleven times the amount** of the MSCI World (-0.26%). The fifth market index, the S&P Banks Index, **rose**. Moreover, the t-statistic of HDFC's 2.83% drop, which measures the number of standard deviations between the actual observation and the predicted movement, is -1.262 with a confidence level of 79.18%. The t-statistic is calculated by dividing the abnormal return by the standard deviation of the errors. At the pleading stage, these metrics sufficiently substantiate that the corrective disclosure caused economic harm to investors and supports a finding of materiality.[2]

---

[1] In any event, quantitative impact is not the only way to allege materiality. The Second Circuit has expressly rejected the application of a numerical or percentage benchmark in order to determine the materiality of a company's misstatement, instead holding that materiality must be assessed in context, and both quantitative and qualitative factors must be analyzed. *ECA, Local 134 IBEW Joint Pension Tr. of Chicago. v. JP Morgan Chase Co.*, 553 F.3d 187, 203-04 (2d Cir. 2009). *See also Strougo*, 105 F. Supp. 3d at 349.

[2] Defendants' do not challenge loss causation in their Motion to Dismiss. The Letter misleadingly cites two cases where the Second Circuit affirmed dismissal of securities cases "with larger price drops," without mentioning that the sufficiency of the "price drops" *had nothing to do with either dismissal*. Letter at 2. *See, e.g., Fogel v. Vega*, 759 F. App'x 18, 21-22 (2d Cir. 2018) (dismissing certain claims as time barred and the remaining claims on scienter and falsity grounds); *ECA*, 553 F.3d at 207 (affirming dismissal on falsity and scienter grounds).

---

The Honorable Eric R. Komitee
Page 3

### III.    Defendants' "Generic Statements" Regarding Fraud Detection and Prevention Are Actionable

A.  *Goldman Sachs*

This Court inquired at the hearing as to whether the Supreme Court's decision in *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 141 S. Ct. 1951, 1958, 1960-61 (2021) discusses treatment of generic statements (*e.g.,* statements regarding conflicts of interest). The Supreme Court did not assess whether generic statements can be held actionable at the pleading stage, but rather remanded a class certification decision to the Court of Appeals "to reassess the district court's price impact determination because the generic nature of a misrepresentation often was important evidence of price impact that courts should consider at class certification." *Id.*

The *Goldman* plaintiffs alleged in their complaint that Goldman maintained an artificially inflated stock price by repeatedly making false and misleading generic statements about its ability to manage conflicts of interest. *Id.* at 1957. These statements from Goldman's SEC filings and annual reports included: "We have extensive procedures and controls that are designed to identify and address conflicts of interest;" "Our clients' interests always come first;" and "Integrity and honesty are at the heart of our business." *Id.* at 1959. When the district court ruled on defendants' motion to dismiss these statements, it held that "Goldman must not be allowed to pass off its repeated assertions that it complies with the letter and spirit of the law, values its reputation, and is able to address "potential" conflicts of interest as mere puffery or statements of opinion." *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 279-80 (S.D.N.Y. 2012). The district court explained that given defendants' "fraudulent acts, it could not have genuinely believed that its statements about complying with the letter and spirit of the law—and that its continued success depends upon it, valuing its reputation, and its ability to address "potential" conflict of interests were accurate and complete." *Id.* at 279.[3]

While the misleading statements here do not address conflicts of interest, the same logic applies. Defendants made repeated statements throughout the Class Period describing comprehensive steps and multiple strategies they purportedly undertook to detect and prevent fraud, ***all while failing to disclose a four-year fraud in HDFC's auto loan division*** (that division comprised more than a quarter of HDFC's total retail assets and ten percent of HDFC's loan book). These included detailed statements in each of HDFC's filings regarding their fraud monitoring committee, audit committee, code of ethics, and whistleblower policy. These statements held particular importance to investors given HDFC's history of regulatory violations. *See* Cmplt., Doc. No. 27, ¶¶ 81-83; Opp. Br., Doc. No. 36, 21-23. Defendants argue that this case is distinguishable from *Goldman* because the alleged misleading statements here "do not describe or address the underlying misconduct." Letter at 4. Not so. The district court found that the *Goldman* defendants' *generic* statements (indeed the Supreme Court referred to them as "generic") regarding conflicts of interest actionable because they failed to disclose conflicts of interest. Here, Defendants'

---

[3] The district court also declined to dismiss on materiality grounds finding that "[a]ccepting Plaintiffs allegations as true at this juncture, as the Court must, the Court cannot say that Goldman's statements that it complies with the letter and spirit of the law and that its success depends on such compliance, its ability to address "potential" conflict of interests, and valuing its reputation, would be so obviously unimportant to a reasonable investor." *Richman.*, 868 F. Supp. at 280.

The Honorable Eric R. Komitee
Page 4

copious statements regarding fraud detection and prevention are actionable because they failed to disclose a four-year fraud.

### B. Ample Precedent in This Circuit Supports a Finding of Falsity

Both district court and Second Circuit caselaw support a finding that Defendants' statements misled investors. For example, in *In re Petrobras Sec. Litig.*, Judge Rakoff upheld statements including that Petrobras established a commission "aimed at assuring the highest ethical standards," that it "adopts the best corporate governance practices," that it undertook to "conduct its business with transparency and integrity" and to "refuse any corrupt and bribery practices, keeping formal procedures for control and consequences of any transgressions," that it was "fully committed to implementing a fair and transparent operation" and "will invest all of our resources with efficiency and discipline," and that its Business and Management Plan "is underpinned by realism, precise targets and rigorous project management with capital discipline." 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015). The court held that because, *as here*, these statements "were made repeatedly in an effort to reassure the investing public about the Company's integrity, a reasonable investor could rely on them as reflective of the true state of affairs at the Company." *Id.* (collecting cases). *In re Vale S.A. Sec. Litig.* is similarly instructive. There, Judge Dearie held that, "[w]hile Vale's statements about safety and sustainability ***may be generic***, because it repeatedly emphasized its commitment to such priorities, Vale "put the topic at issue such that [the Court] cannot say that, as a matter of law, investors would not find [certain] representations material." No. 19 CV 526 (RJD) (SJB), 2020 U.S. Dist. LEXIS 91150, at *33-34 (E.D.N.Y. May 20, 2020) (emphasis added).

Defendants' reliance on *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 104 (2d Cir. 2021) is misplaced. Letter at 5. There, the Second Circuit dismissed statements regarding corporate responsibility as puffery and because "although Danske averred that it took steps to comply with AML protocols and vaguely recited some AML buzzwords, ***it claimed no particular acts of compliance***." *Id.* (emphasis added). Citing its decision in *Singh v. Cigna Corp.,* 918 F.3d 57, 63 (2d Cir. 2019) (which Defendants also cite in their Letter), the Second Circuit made clear that, ***"[a]ssertions of satisfactory regulatory compliance can be materially misleading if 'the descriptions of compliance efforts" are "detailed" and "specific."*** *Id.* at 103 (emphasis added). Here, the Complaint alleges that Defendants repeatedly and consistently described specific strategies and efforts they employed to detect and prevent fraud. Complt., ¶¶ 21, 34, 37, 43, 46, 51, 54, 59, 62, 71. Especially considered in the light of their prior fraudulent conduct, ¶¶ 81-83, Defendants' statements are distinguishable from the vague assertions alleged in *Danske* and *Singh* and are thus actionable.[4]

---

[4] The remaining Second Circuit cases Defendants cite are irrelevant because in each instance the court dismissed the "generic" statements at issue as inactionable puffery, while the Court here already stated at the January 14, 2022 hearing that the statements at issue are not puffery. Transcript of Civil Cause for Oral Argument, Doc. No. 43, at 30:14-20. ("THE COURT: I'm not sure puffery is the word I would use. It's no -- puffery makes it sound like, oh, this is the kind of thing that, you know, people just say to make themselves look good but nobody ever means it, and it's just, you know, it's salesmanship. I don't -- I wouldn't characterize these statements as that").

The Honorable Eric R. Komitee
Page 5

### C.  Conclusion

For the foregoing reasons, and those stated in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Amended Class Action Complaint (Doc. No. 36), the Court should deny Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

*s/ Tamar A. Weinrib*_____
Tamar A. Weinrib
Counsel for Plaintiff

cc:    All Counsel of Record (via ECF)